UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MARIA S. ENCINAS DE NORIEGA,<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security<br><br>Respondent. | Case No.: 1:16-CV-00293-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before this Court is Petitioner Maria S. Encinas de Noriega's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income payments. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, this Court enters the following Memorandum Decision and Order:

I. **ADMINISTRATIVE PROCEEDINGS**

On May 27, 2010, Maria S. Encinas de Noriega ("Petitioner") filed an application for Disability Insurance Benefits, alleging disability beginning January 1, 2010 (later amended to May 27, 2010). This claim was initially denied on July 22, 2010 and, again, on reconsideration on October 21, 2010. On November 5, 2010, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 26, 2012, ALJ Lloyd E. Hartford held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Michael McCarthy,

appeared and testified. Impartial vocational expert, Beth Cunningham, also appeared and testified at the same January 26, 2012 hearing.

On March 12, 2012, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on May 3, 2012 and, on June 10, 2013, the Appeals Council vacated the March 12, 2012 Decision and remanded the case to the ALJ to obtain additional information. On April 7, 2014, the ALJ held a second (video) hearing, at which time Petitioner, again represented by attorney Michael McCarthy, appeared and testified. Impartial vocational expert, Kent Granat, also appeared and testified at the same April 7, 2014 hearing.

On May 13, 2014, the ALJ issued a second Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on July 15, 2014 and, on January 11, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he Commissioner's decision that the Petitioner is not disabled contains legal errors and is not supported by substantial evidence . . . ." Pet. for Review, p. 3 (Docket No. 1). In particular, Petitioner identifies the "issue on appeal" as:

1. Should the ALJ have given controlling weight to the opinion of her treating physician?

2. Did the ALJ give specific and legitimate reasons for giving little weight to the opinion of her treating physician?

3. Did the ALJ fail to consider whether her Fibromyalgia equaled a listed impairment?

**MEMORANDUM DECISION AND ORDER - 2**

> 4. Did the ALJ cite specific and legitimate reasons for finding the claimant was not credible?

Pet.'s Brief, p. 5 (Docket No. 13). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id.* at p. 16; *see also* Pet. for Review, pp. 3-4 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 3**

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is

**MEMORANDUM DECISION AND ORDER - 4**

work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engage in substantial gainful activity since May 27, 2010, the amended alleged onset date." (AR 19).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "fibromyalgia and degenerative disc disease" (AR 19-21).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 21).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b)," including:

> [T]he claimant can lift, carry, push or pull no more than 20 pounds at a time and frequently lift, carry, push or pull objects weighing up to 10 pounds. The claimant can walk off-and-on for no more than about six hours during an eight-hour workday, stand off-and-on for no more than about six hours during an eight-hour workday, and can stand or walk off-and-on for a total of about six hours during an eight-hour workday. The claimant can sit for approximately six hours total during an eight-hour workday. In addition, the claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs. She can frequently balance, but only occasionally stoop, kneel, crouch and crawl.

(AR 21) (internal citation omitted); *see also id*. at (AR 21-26).

**MEMORANDUM DECISION AND ORDER - 6**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing past relevant work as a "Teacher Aide II." *See* (AR 26). The ALJ then went on to find that there are also other jobs that exist in significant numbers in the national economy that Petitioner can perform, including electrode cleaner (light), electronics worker (light), circuit board assembler (light), semi-conductor bonder (sedentary), final assembler – eye glass assembler (sedentary), and touch-up inspector (sedentary). *See* (AR 27-28). Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from May 27, 2010, through the date of this decision." (AR 28) (internal citation omitted).

**B.     Analysis**

    1.     <u>Petitioner's Fibromyalgia and Step 3 of the Sequential Process</u>

Petitioner argues that the ALJ erred at step 3 of the sequential process because he failed to consider whether her fibromyalgia – which the ALJ found to be a severe impairment at step 2 of the sequential process – medically equals a listed impairment.

"If the findings related to [a claimant's] impairments are a t least of equal medical significance to those of a listed impairment, we will find [the claimant's] combination of

impairments is medically equivalent to that listing." 20 C.F.R. § 404.1526(b)(3). "If the claimant has more than one impairment, the Commissioner must determine whether the combination of [the] impairments is medically equal to any listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (citing 20 C.F.R. § 404.1526); *see also* 20 C.F.R. § 416.926. "[T]he ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Additionally, the ALJ is not limited to simply considering a claimant's severe impairments. *See Nguyen v. Colvin*, 2014 WL 127071, *9 (D. Or. 2014) (if claimant's "medically determinable impairment of fibromyalgia does not meet or equal a listed impairment, the ALJ must then consider the combined effect of all of [claimant's] impairments in conjunction with her fibromyalgia, severe and non-severe, in determining her RFC.").

Relevant here, Social Security Rulings provide further guidance for step three determinations involving claimants suffering from fibromyalgia:

> [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p.

The ALJ did not consider whether Petitioner's fibromyalgia[1] equaled any listing, including listing 14.09D (inflammatory arthritis). *See* (AR 21) (ALJ concluding at step 3 of sequential process: "Fibromyalgia is not specifically included in the Listing of Impairments in the Regulations. Accordingly, the claimant's allegation of fibromyalgia neither meets nor equals

---

[1] The ALJ did consider whether Petitioner's degenerative disc disease met or equaled listing 1.04, ultimately concluding that it did not. *See* (AR 21).

**MEMORANDUM DECISION AND ORDER - 8**

a listing."). Petitioner contends this oversight warrants a remand, arguing that, "[u]nder [the ALJ's] reasoning, if there isn't a listing for a particular medical impairment, he has no duty to consider whether it equals a different listing." Pet.'s Brief, pp. 9-10 (Docket No. 13).

Countering that argument, Respondent says that Petitioner did not raise a "step 3 issue" in her post-hearing memorandum to the ALJ, at either of the administrative hearings or in her requests for review submitted to the Appeals Council. *See* Respt's Brief, p. 5 (Docket No. 15) (citing (AR 13, 36-86, 89-115, 213, 373-78)). Accordingly, Respondent contends that Petitioner "has not preserved the issue for appeal" before this Court. *Id.*[2] This Court disagrees.

After the briefing had been filed in this case, the Ninth Circuit reconciled the decision in *Meanel v. Apfel*, 172 F.3d 1111, 1113-15 (9th Cir. 1999) (cited by Respondent), holding that represented claimants must raise all issues and evidence at their administrative hearings to preserve them on appeal, with the Supreme Court's subsequent decision in *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (cited by Petitioner), holding that claimants need not exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. *Compare* Respt's Brief, p. 5 (Docket No. 15), *with* Pet.'s Reply Brief, pp. 1-3 (Docket No. 16). In *Shaibi v. Berryhill*, 870 F.3d 874 (9th Cir. 2017), the Ninth Circuit ruled that the *Meanel* waiver applied to issues not previously raised, where (1) the claimant did not show good cause for his failure to challenge the vocational expert's job numbers during the hearing; and, (2) where there was no indication that the ALJ was required to inquire *sua sponte* into the foundation for a vocational expert's opinion on job numbers. *See id.* at 882.[3]

---

[2] Respondent goes on to argue that, even if Petitioner had preserved the step 3 issue, it nonetheless fails on the merits. *See* Respt's Brief, pp. 5-7 (Docket No. 15).

[3] This is not inconsistent with *Sims*, where Justice Thomas recognized that the issue of "[w]hether a claimant must exhaust issues before the ALJ [(as compared to the Appeals Council)] is not before us." *Sims*, 530 U.S. at 107.

**MEMORANDUM DECISION AND ORDER - 9**

Here, although Petitioner may not have specifically argued that her fibromyalgia equaled listing 14.09 to either the ALJ or the Appeals Council, she is not trying to introduce new evidence now to inform that discrete issue. Hence, the ALJ is required to explain his evaluation of the evidence at step 3 of the sequential process. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (at step 3 of sequential process, "ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). To be sure, according to Petitioner, the ALJ already had the evidence (the treatment notes and testimony from her treating physician, Lorraine Tangen, M.D.,) from which to conclude that her impairments in fact equaled a listed impairment, listing 14.09. *See* Pet.'s Brief, pp. 6-10 (Docket No. 13); Pet.'s Reply Brief, pp. 3-4 (Docket No. 13); *see also, e.g.*, *Farley v. Colvin*, 231 F. Supp. 3d 335, 340-41 (N.D. Cal. 2017). That Respondent believes that Petitioner's impairments do not equal listing 14.09 in any event, highlights the clashing arguments in these substantive, fact-driven respects. With this in mind, remand is appropriate to settle the waters on the issue.

    2.    <u>Petitioner's Treating Physician, Dr. Tangen</u>

The medical opinion of a treating physician is entitled to special consideration and weight. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). Such deference is warranted because the treating physician "is employed to cure and has a greater opportunity to know and observe the individual." *Id*. However, a treating physician's opinion is not necessarily conclusive. *See id*. at 762. If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons

supported by substantial evidence in the record. *See id*. A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in record, or other factors ALJ deems material to resolving ambiguities); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Here, Petitioner's treating physician, Dr. Tangen, supplied her medical opinion as to Petitioner's limitations in three parts: (1) a January 20, 2012 Medical Source Statement ("MSS") (AR 430-36); (2) a September 2, 2013 letter from to the Social Security Administration (AR 461); and (3) a March 26, 2014 recorded statement (AR 476-81). These sources – stemming from Petitioner being treated by Dr. Tangen since 2000 (even before the alleged onset date) – combine to reflect Dr. Tangen's opinion that, owing to her fibromyalgia, Petitioner has significant limitations affecting her ability to work. For example, Dr. Tangen states:

- <u>January 20, 2012 MSS</u>: Petitioner cannot lift or carry any amount of weight; she can sit one hour, stand one hour, and walk for 30 minutes without interruption; she can tolerate only a total of six hours of work activity; she cannot effectively use her hands or feet; she cannot perform any postural activities. *See* (AR 430-33).

- <u>September 2, 2013 Letter</u>: "[G]iven her fibromyalgia, she has a legitimate basis for her complaints of pain. Her pain is increased with even minimal lifting and carrying. She is unable to walk or stand for even minimal amounts of time. Therefore, working at even a relatively sedentary job would cause increased levels of pain resulting in an even more limited ability to sit, stand, and walk, et cetera. Ms. Noriega's condition has only worsened

**MEMORANDUM DECISION AND ORDER - 11**

since [the January 20, 2012 MSS]. I feel that, at this time, she is not employable at all. Even if she had a good day, where she could work up to 8 hours, she would be in an excessive amount of pain. As a result, she would be prone to as many as 2 or 3 absences a week. I believe she is unable to do the lifting or walking that is required of even sedentary work. She recently developed problems with her feet. I felt these problems were caused by more than just her fibromyalgia. I referred her to a foot doctor, Dr. Holman of Twin Falls. These problems, further limit her ability to walk ro stand. She would be able to tolerate these activities less than one hour per day, if at all." (AR 461).

- March 26, 2014 Statement: "Patient had significant pain but her pain caused weakness and the pain/weakness combination limited any sustained ability to perform any kind of repetitive activity, sustained activity or lifting type of activity. . . . [She could not do] anything that required her to be, that would require repetitive lifting of 10 pounds, because she would weaken, fatigue and start dropping things. Also the sedentary part of things, there are limitations in how long she could sit before she would have to get up and walk around or stand and there are limitations on how long she could stand [and] how long she could walk, so even a sedentary job had limitations based on those factors as well. . . . . I think [the January 20, 2012 MSS] was valid for then. I think the limitations would continue to persist although some of the things like even the sitting times, walking times, standing times, would be even less now than they were then. (477-78).

However, the ALJ gave Dr. Tangen's opinions only "little weight," reasoning that they (1) are not consistent with the medical evidence of record, (2) are internally inconsistent, (3) are inconsistent with Petitioner's testimony concerning her daily activities, and (4) they improperly opine that Petitioner is disabled – a determination reserved to the Commissioner. *See* (AR 24-25). Under scrutiny, these reasons are not specific and legitimate reasons, supported by substantial evidence in the record, for properly rejecting Dr. Tangen's opinions.[4]

---

[4] Dr. Tangen's opinions – particularly the physical limitations associated with Petitioner's fibromyalgia – do not exist without some level of tension from elsewhere in the medical record. For this reason, it cannot be said that the ALJ's failure to lend controlling weight to Dr. Tangen's opinions was outright improper. Nonetheless, *to reject* Dr. Tangen's opinions in this setting, the ALJ must provide specific and legitimate reasons, supported by the record, for doing so. *See supra*.

**MEMORANDUM DECISION AND ORDER - 12**

First, as the ALJ describes, during her treatment of Petitioner (and separate from her above-referenced *opinions*), Dr. Tangen consistently noted Petitioner's positive trigger/tender points, muscle pain/weakness, joint aches, stiffness, fatigue, difficulty sleeping, dizziness, and other symptoms. *See* (AR 22) (citing (AR 380-81, 383, 386, 421, 424, 427, 467)). These findings were corroborated elsewhere in the record, by different medical providers. *See* (AR 387-90, 437, 470-75). All of those symptoms are indicative of fibromyalgia. *See* SSR 12-2p; *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004) (explaining that common symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."). Notably, there are no laboratory tests or objective findings that confirm the presence or severity of fibromyalgia. *See Benecke*, 379 F.3d at 590; *Belanger v. Berryhill*, 685 Fed. Appx. 596, 598 (9th Cir. 2017). Indeed, "[o]ne of the most striking aspects of this disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting); *see also Cota v. Comm'r of Soc. Sec.*, 2009 WL 900315, *9 (E.D. Cal. 2009) ("Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory functions, or reflexes."). As a result, a treating doctor's fibromyalgia diagnosis may be based purely on a patient's reports of pain and other symptoms. *See Benecke*, 379 F.3d at 590; *see also Belanger*, 685 Fed. Appx. At 598. Therefore, "[a]ny lack of abnormal objective findings therefore was not a sufficient basis for rejecting [Dr. Tangen's] opinions regarding the severity of [Petitioner's] fibromyalgia." *Rose v. Berryhill*, 256 F. Supp. 3d 1079, 1087 (C.D. Cal. 2017) (citing *Day v. Weinberger*, 522 F.2d

1154, 1156 (9th Cir. 1975) (ALJ erred by relying upon "his own exploration and assessment" of plaintiff's medical condition rather than medical evidence in record).[5,6]

Second, the ALJ has culled from Dr. Tangen's voluminous treatment notes a single reference to Petitioner being situationally less incapacitated than what Dr. Tangen formally opined. Specifically, the ALJ relies on Dr. Tangen's statement that Petitioner could "never" use foot controls in the MSS (AR 432), but still could "occasionally drive" (AR 434). That reliance, however, ignores the difference between what Petitioner could do in a work setting "on a regular and continuing basis" and Petitioner's "occasional" need to drive for personal reasons (*compare* (AR 434), *with* (AR 430)). Such reliance also fails to acknowledge Dr. Tangen's simultaneous awareness of concerns with those limited instances in which Petitioner does drive (*see* (AR 434) ("Although [patient] can drive, with the [increased] pain in her right leg, it could not be safe and she is afraid to and rarely drives on her own.")). "In making their determinations, ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwick v. Colvin*, 2015 WL 12532350, at *2 (S.D. Cal. 2015).

---

[5] Respondent argues that the ALJ "also considered the overall record, which includes Dr. Sant's evaluation indicating Petitioner had 4/5 strength in the upper extremities with submaximal effort, normal coordination, 'intact' fine motor coordination, 'normal rapid alternative movements and no tremors,' ability to get dressed/undressed without assistance, and intact sensation except a tingling sensation." Respt's Brief, p. 9 (Docket No. 15) (citing (AR 23) (citing AR 389)). However, it is unclear to what extent, if any, the ALJ was really relying upon Dr. Sant's evaluation when, in his Decision, the ALJ gave "little weight" to Dr. Sant's opinion because it was, paradoxically "inconsistent with the medical evidence as a whole." (AR 23).

[6] It is unclear whether the ALJ considers the opinions of non-examining medical consultants Thomas Coolidge, M.D. and Ward Dickey, M.D. to also represent the inconsistent medical evidence in the record that further supplies the justification for questioning Dr. Tangen's opinions. *See* (AR 25). If so, it must be pointed out that, while the ALJ gave these doctors' opinions "great weight as they are consistent with the medical evidence of record as a whole," there is no clear understanding of what that record is – especially when considering that the ALJ gave little weight to the opinions of both Dr. Tangen and Dr. Sant. *Id.*

**MEMORANDUM DECISION AND ORDER - 14**

Third, Social Security Administration rulings recognize that the longitudinal record is particularly important in fibromyalgia cases "because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p. So, the ALJ's similar reliance on the fact that Dr. Tangen opined that Petitioner cannot perform any postural activities or lift/carry any weight, but that Petitioner testified that she periodically went to church and does household chores (albeit with breaks), again misses the point. *See* (AR 24-25) citing (AR 321-29, 430, 433). Any minor discrepancies here relate to the difference between regularly and continuously functioning in a work setting, or simply "getting by." *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits."). In short, there is no evidence in the record that Petitioner spends (or is able to spend) a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.

Fourth, it is true that a treating physician's opinion on the ultimate issue of disability is not conclusive. *See Rodriguez*, 876 F.2d at 762; SSR 96-5p ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. § 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."). Therefore, to the extent Dr. Tangen opines on the legal issue of whether Petitioner is disabled under the Social Security Act, such opinions are not "medical opinions" to which weight is (or should be) lent. Nevertheless, even when extracting such improper opinions from this Court's consideration of Petitioner's appeal, it cannot be said that the balance of Dr. Tangen's opinions are tainted as a result – that is, such a differentiation is not

**MEMORANDUM DECISION AND ORDER - 15**

a good reason to conclude that an objectionable statement on the ultimate legal issue of Petitioner's disability is a legitimate reason for rejecting Dr. Tangen's opinions *in toto*.

Ultimately, this Court's duty is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision is supported by the record. Against that standard, *on this record*, the ALJ's decision to give Dr. Tangen's opinions only "little weight" is not supported by specific and legitimate reasons, supported by substantial evidence in the record, for doing so. Hence, remand is appropriate on this issue.

### 3. Petitioner's Credibility

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186

**MEMORANDUM DECISION AND ORDER - 16**

(discussed *supra*).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan*, 246 F.3d at 1208 (citing *Reddick*, 157 F.3d at 722).

Here, while the ALJ ruled that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he went on to find that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (AR 25).  The ALJ cited two reasons for questioning Petitioner's credibility:  (1) her inconsistent references to her (in)ability to drive, and (2) periods of time where she didn't have significant complaints.  *See id*.  Though it may be possible to appropriately challenge Petitioner's credibility, the specific reasons offered by the ALJ for doing so in this instance are lacking.

First, the ALJ's claim that Petitioner's statements within her June 10, 2012 "Function Report – Adult" are inconsistent with what she said to Dr. Sant nearly a month later, is overstated.  (AR 25) ("It is inconsistent as the claimant reported in her Function Report she 'can't even drive,' yet told Dr. Sant she was able to drive.") (*comparing* (AR 324-25, 328), *with* (AR 388)).  Dr. Sant indicated in his treatment note that Petitioner "reports she is able to drive *but does so on a limited basis*."  (AR 388) (emphasis added).  As described *supra*, the record indicates that Plaintiff can drive, if necessary; however, due to her impairments, she rarely drives and generally relies upon others for transportation.  *See supra*.  Thus, even if Petitioner's comments in these respects could be understood to be technically inconsistent, they are not of any noteworthy significance on the whole when considering Petitioner's credibility.

Second, gaps in the Petitioner's treatment history are not necessarily reflective of someone who may be exaggerating her symptoms and alleged physical limitations – particularly when considering Petitioner's fibromyalgia and overall extensive treatment history with Dr. Tangen. *See, e.g.*, *Robarge v. Colvin*, 2015 WL 3442090, *2 (C.D. Cal. 2015) ("Although the record does reflect these gaps in treatment, the Court nonetheless finds that the cited gaps, of three and six overlapping months, are too brief to give rise to a legally sufficient reason to reject plaintiff's subjective symptom testimony, especially since the record on the whole reflects that plaintiff generally obtained treatment on a regular basis."). Additionally, at times, Petitioner lacked the means necessary to pursue treatment. *See* (AR 53-54) (Petitioner testifying that there have been times when lack of money kept her from "going to the doctor": "There's my husband's income that is getting us through all this, and that's why sometimes I just don't see a point to go see a doctor every month when I have to pay $180 every time I go see her, and it was pretty hard – it is hard."). "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (claimant's failure to receive medical treatment during period that he had no medical insurance could not support adverse credibility finding).

Thus, these reasons do not offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. *Cf.* (AR 410) (Dr. Coolidge – whose opinion ALJ lent "great weight" to – considered Petitioner to be credible). This is not to say that this Court conclusively finds Petitioner to be disabled under the applicable rules and regulations, or that Petitioner suffers from chronic pain. Instead, this Court only concludes that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits does not contain clear and convincing reasons for doing so. Remand is therefore appropriate on this issue.

**MEMORANDUM DECISION AND ORDER - 18**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

However, the ALJ's analysis at step 3 of the sequential process, as well as the reasons given by the ALJ for discrediting Dr. Tangen's opinions and questioning Petitioner's credibility are not properly supported; the case is therefore remanded for these reasons.  The ALJ shall revisit each of these issues for the purposes of any disability determination.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **January 30, 2018**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge